**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROLAND BLACK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-6518 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| THE CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

One day, Officers Priscilla Hernandez and Oscar Zermeno of the Chicago Police Department pulled over a vehicle for a minor traffic violation. What began as an ordinary traffic stop quickly turned dangerous. The driver floored it, hoping for a quick getaway. He crashed his car, and then fled on foot. He was better at running than driving. He got away.

Sometime later, the two officers obtained an arrest warrant for Plaintiff Roland Black, and he was later arrested. After a bench trial, Black was acquitted of all charges. The reason for the acquittal isn't clear, but the important thing is that he was found not guilty.

Black then brought this suit, bringing three claims. He alleges that the officers wrongfully detained him and violated his right to due process. He also brings a *Monell* claim against the City of Chicago based on various widespread practices, and based on a failure to train or discipline its police officers.

The officers moved for judgment on the pleadings for the due process claims. The City, in turn, moved for summary judgment on the *Monell* claim.

For the reasons stated below, the motions are granted.

## Background[1]

From a procedural standpoint, the factual footing of each motion is different. A motion for judgment on the pleadings is about the allegations in the complaint. A motion for summary judgment is about the facts in the record. Sometimes they're the same, but oftentimes they're not. Here, given the nature of the motions, the Court will summarize the facts in the record.

On January 24, 2014, Officers Priscilla Hernandez and Oscar Zermeno of the Chicago Police Department were in their squad car, on patrol. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶¶ 2, 4 (Dckt. No. 119). They stopped a red Buick Regal for making an illegal turn. *Id.* at ¶ 5; Cplt., at ¶ 12 (Dckt. No. 1).

Hernandez asked the driver for his license. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 6 (Dckt. No. 119). But after she took the license, the driver had other ideas. He decided to hightail it out of there. He sped away.

The driver didn't get very far. *Id.* at ¶ 7. He crashed into several parked cars. *Id.* at ¶ 8. He then ditched his crumpled car and fled on foot. *Id.* at ¶ 9. A chase ensued, but he escaped. *Id.* at ¶ 10.

Sometime after the crash, Officers Hernandez and Zermeno obtained an arrest warrant for Plaintiff Roland Black. *Id.* at ¶ 11. The parties don't provide the backstory. One might think that the police arrested Roland Black because the driver handed the officer the license of Roland Black. After all, why would the officers arrest Roland Black if the driver handed them the license of someone else?

---

[1] The background facts are sparse because the parties submitted a slim factual record. *See* Pl.'s Resp. to Defs.' Statement of Facts (Dckt. No. 119); Defs.' Resp. to Pl.'s Statement of Additional Facts (Dckt. No. 133).

Maybe the driver wasn't Roland Black, but handed the officers Roland Black's license. Or maybe the driver wasn't Roland Black, and the driver handed the officers the license of someone who wasn't Roland Black, but the officers mixed things up somehow and arrested Roland Black by mistake. Or maybe there's some other explanation. There's more to the story, but the story is untold. The record does not explain why the officers arrested Black, but the important thing is that he was arrested.[2] *Id.* at ¶ 12.

The record does not reveal when the arrest took place. The traffic stop was in 2014, so maybe that's when the arrest occurred.

In their statements of fact, the parties fast-forward to 2017, so the Court will jump ahead, too.

In August 2017, Black was acquitted of all charges after a bench trial. *Id.* at ¶ 13. Again, the parties don't tell the backstory. The parties don't reveal why he was acquitted. Maybe there was a problem with the government's evidence. Maybe it was a case of mistaken identity. Or maybe there was some other reason to think that he didn't commit the crime. In any event, the important point is that he was found not guilty.

Black responded by filing this lawsuit. *See* Cplt. (Dckt. No. 1). His complaint includes three claims. Count I is a claim of wrongful detention against Officers Hernandez and Zermeno under the Fourth and Fourteenth Amendments. *See id.* at ¶¶ 41–46. Count II is a due process claim against the officers, alleging that they withheld, suppressed, and fabricated evidence. *See id.* at ¶¶ 47–55. Count III is a *Monell* claim against the City of Chicago. *See id.* at ¶¶ 56–85.

---

[2] There are gaps in the story, but the complaint alleges that there were gaps in the evidence too. Apparently, the Chicago Police Department destroyed the license. *See* Cplt., at ¶ 25 (Dckt. No. 1). The police car had dashcam footage, but that video was purged too. *Id.* at ¶ 26. That destruction isn't material to the motions at hand. The Court offers it as background only.

## Discussion

There are two pending motions. Officers Hernandez and Zermeno moved for judgment on the pleadings on Count II under Rule 12(c). *See* Defs.' Mtn. for J. on the Pleadings (Dckt. No. 112); Fed. R. Civ. P. 12(c). The City of Chicago moved for summary judgment on Count III. *See* Defs.' Mtn. for Summ. J. (Dckt. No. 113). Different standards apply to each motion.

A party may move for judgment on the pleadings any time after the pleadings are closed. *See* Fed. R. Civ. P. 12(c); *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). The standard is the same as the standard for a motion to dismiss under Rule 12(b)(6). *See Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1092 (7th Cir. 2018). "To survive a motion for judgment on the pleadings, a complaint must state a claim to relief that is plausible on its face." *Denan v. Trans Union LLC*, 959 F.3d 290, 293 (7th Cir. 2020) (cleaned up). Judgment on the pleadings is proper only if plaintiff's allegations "show that there is an airtight defense [such that he] has pleaded himself out of court." *Id.*

As the name suggests, a motion for judgment on the pleadings depends on the content of the pleadings alone. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The pleadings include the complaint, the answer, and any accompanying written instruments attached as exhibits. *Id.* at 452–53; *see also Arethas v. S/TEC Grp., Inc.*, 2005 WL 991782, at *6 (N.D. Ill. 2005) ("[A]lthough in ruling on a motion for judgment on the pleadings a court can consider affidavits attached to a complaint or an answer to the complaint, a court cannot consider affidavits that are not a part of the pleadings.").

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is

4

such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court construes all facts in the light most favorable to the non-moving party, giving the non-movant the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *See Anderson*, 477 U.S. at 252. Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

Summary judgment is the time for a party to put its evidentiary cards on the table. "[S]ummary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

The standards are different, but the result here is the same. The Court grants the motion for judgment on the pleadings, and grants the motion for summary judgment.

## I.      Motion for Judgment on the Pleadings by the Officers (Count II)

The first motion is the motion for judgment on the pleadings filed by the two officers. The motion takes aim at Count II (only), but the argument sweeps more broadly.

Taking a step back, two claims involve due process. Count I is for wrongful pretrial detention, based on the Fourth and Fourteenth Amendments. *See* Cplt., at ¶ 42 (Dckt. No. 1). Count II alleges that the officers "withheld, suppressed and fabricated evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff." *Id.* at ¶ 47. Black alleges that the officers deprived him of "his right to due process and his right to be free from seizures of his person, including imprisonment, without probable cause." *Id.* at ¶ 50.

The Fourteenth Amendment is the wrong amendment. Black was a pretrial detainee. The Seventh Circuit has explained that the Fourth Amendment, not the Fourteenth Amendment, governs any claim about wrongful pretrial detention. "[A]ll § 1983 claims for wrongful pretrial detention – whether based on fabricated evidence or some other defect – sound in the Fourth Amendment." *See Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019); *see also id.* at 478 ("It's now clear that a § 1983 claim for unlawful pretrial detention rests *exclusively* on the Fourth Amendment.") (emphasis in original); *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019) ("[W]hen a plaintiff alleges that officials held him in custody before trial without justification, malicious prosecution is the wrong characterization. *There is only a Fourth Amendment claim* – the absence of probable cause that would justify the detention. And we recently reiterated that the Fourth Amendment, not the Due Process Clause, governs a claim for wrongful pretrial detention.") (cleaned up) (emphasis added).

The Fourth Amendment governs Black's claims, not the Fourteenth Amendment. The Court grants the officers' motion for judgment on the pleadings on Count II to the extent that it

invoked the Fourteenth Amendment. The Court *sua sponte* dismisses Count I to the extent that it relied on the Fourteenth Amendment (and not the Fourth Amendment). Count I otherwise survives under the Fourth Amendment.[3]

## II.      Motion for Summary Judgment by the City (Claim III)

Black also brings a *Monell* claim against the City of Chicago. The claim has two theories. The first theory is that the City has a widespread practice of arresting people without a factual basis for doing so, and a widespread practice of giving false testimony and keeping it quiet through a code of silence. The second theory is that the City has failed to train and discipline its officers.

### A.      Widespread Practices

A municipality is not vicariously liable for the constitutional torts of its employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978). But a municipality "may be held liable for *its own* violations of the federal Constitution and laws." *See First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (emphasis added). "Note the qualifier: 'its own violations.'" *Id.* To prevail, a plaintiff "must challenge conduct that is properly attributable to the municipality itself." *Id.*

Three scenarios can give rise to municipal liability under section 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so

---

[3] Count II appears to be a due process claim under the Fourteenth Amendment (only). It begins with the heading: "Violation of Plaintiff's Due Process Rights." *See* Cplt., at 7 (Dckt. 1). That said, paragraph 50 mentions Black's "right to due process and his right to be free from seizures of his person . . . ." *Id.* at ¶ 50. The Fourth Amendment covers unreasonable seizures, so perhaps one could read that allegation to rope in the Fourth Amendment. That said, it is not clear what value Count II would bring if it invokes the Fourth Amendment, because Count I already invokes the Fourth Amendment. So, this Court enters judgment on the pleadings for Count II in its entirety. If Plaintiff believes that Count II retained some residual value under the Fourth Amendment, despite the existence of Count I, Plaintiff can file a motion for leave to amend.

permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.*; *see also Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). "In other words, to maintain a § 1983 claim against a municipality, one must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

Here, Black brings his claim under the second theory, meaning a widespread practice or custom. The complaint alleges two practices: bogus arrests, and a code of silence.

First, Black claims that the City of Chicago has a "widespread practice and custom of subjecting citizens to arrest, charges, and prosecution without probable cause, based on false evidence, and without disclosure of exculpatory evidence . . . ." *See* Cplt., at ¶ 54 (Dckt. No. 1). Second, he alleges a widespread practice of a "code of silence," meaning that officers and City employees "agreed explicitly and implicitly not to report misconduct committed by employees of the Chicago Police Department, creating an environment of lawlessness, without discipline, where employees of the Chicago Police Department engaged in misconduct without fear of reprisal." *Id.* at ¶ 65.

To prevail on his *Monell* theories, Black must show that the two practices were "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *See Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016); *see also Gable*, 296 F.3d at 537.

The Seventh Circuit has not adopted any bright-line rules defining "custom or practice," but it has found that "it must be more than one instance." *See Thomas*, 604 F.3d at 303 (quoting *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988)). That said, a practice may not be widespread if it took place two, three, or four other times. *See, e.g.*, *Palmer*, 327 F.3d at 595–96 ("Palmer's alleged personal knowledge of two incidents of misconduct by correctional officers in a period of one year certainly fails to meet the test of a widespread unconstitutional practice by the Jail's staff that is so well settled that it constitutes a custom or usage with the force of law."); *Gable*, 296 F.3d at 538 ("[T]hree incidents where vehicle owners were erroneously told that their vehicles were not at Lot 6 do not amount to a persistent and widespread practice.") (quotation marks omitted); *Grieveson v. Anderson*, 538 F.3d 763, 773–75 (7th Cir. 2008) (holding the plaintiff's allegations of four botched refills of his pain prescriptions did not prove a widespread unconstitutional practice).

The other incidents need to be sufficiently similar to support an inference of a broader pattern. The greater the dissimilarity, the greater the skepticism that there is a single actionable municipal practice or custom. *See, e.g.*, *Tillman v. Burge*, 813 F. Supp. 2d 946, 978 (N.D. Ill. 2011) (explaining that in establishing the existence of such a policy or practice, it is insufficient to "splatter-paint a picture of scattered violations" through "collateral accusations of marginally related incidents") (citation omitted).

Black pointed to two alleged practices, but the first one fell by the wayside. The complaint alleged that the City has a widespread practice of false arrests. But in his summary judgment brief, Black abandoned the point. Black did not argue that the City has a widespread practice of false arrests, let alone offer any evidence, so the Court deems it abandoned. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008) ("In her response to [the

defendant's] motion for summary judgment, [the plaintiff] failed to defend her claim against these arguments. She therefore abandoned the claim.") (citation omitted); *Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (explaining that the district court was justified in deeming a claim abandoned where the plaintiff failed to delineate a claim in his brief in opposition to summary judgment).

Even if Black hadn't abandoned the claim, it would not survive. Black's complaint pointed to a smattering of lawsuits and settlements involving the Chicago Police Department stretching back more than two decades. *See* Cplt., at ¶ 64(a)–(g) (Dckt. No. 1). The dirty laundry list includes cases and settlements about the "gang loitering ordinance" in the 1990s, wrongful convictions stemming from Jon Burge, wrongful arrests based on false lineups, false confessions, and so on. *Id.* He also mentions a 2016 report by the Chicago Police Accountability Task Force ("PATF"). *Id.* at ¶ 64(d).

Those cases won't cut it. Those allegations appear in the complaint, which is not evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). He offers no evidence about those other cases, say, by submitting an affidavit or declaration. In fact, in his brief, Black doesn't even point to those other cases, even though they formed the basis of the claim in his complaint. Allegations suffice at the pleading stage, but summary judgment requires evidence. And here, there is none.[4]

Even if Black had offered evidence about the existence of those cases, it would not carry the day. Black would need to show a connection between those cases and the case at hand, with an appropriate degree of specificity. And here, Black draws no such connection. A defendant cannot get to trial on a *Monell* claim simply by showing that the City of Chicago gets sued a lot.

---

[4] This Court could take judicial notice of the filing of those cases, but elects not to do so because there is no reason to think that they are similar to the case at hand.

For example, the case at hand does not involve Chicago's gang ordinance, or wrongful convictions, or false lineups, or false confessions. A practice of false convictions, false lineups, and false confessions does not move the needle when this case does not involve a conviction, or a lineup, or a confession.

Black's brief does include a passing reference to the 2016 report from the Police Accountability Task Force. *See* Pl.'s Opp. to Defs.' Mtn. for Summ. J., at 5 (Dckt. No. 120). But the report's conclusion about the high rate of searches and seizures of African Americans is too general to support his alleged widespread practice. *See Carmona v. City of Chicago*, 2018 WL 1468995, at *4 (N.D. Ill. 2018) ("The DOJ report certainly identifies serious shortcomings in CPD's supervisory systems, but the Court cannot countenance it as a master key to unlock discovery's door for any *Monell* claim against the City, no matter how scantily the plaintiff connects his claim to the report's findings."); *see also Jackson v. City of Chicago*, 2021 WL 3883111, at *6 (N.D. Ill. 2021) ("Jackson's broad citation to the general findings of the DOJ Report, 'without any allegations connecting the report findings to the misconduct alleged in his Complaint, is insufficient to support his *Monell* claim.'") (citing *Carmona v. City of Chicago*, 2018 WL 306664, at *3 (N.D. Ill. 2018)).

Black also points to a second practice. He claims that there is a widespread practice of officers giving false testimony and protecting each other through a "code of silence." Once again, Black does not offer enough evidence to get to a jury.

The complaint included sweeping allegations about a code of silence. The complaint pointed to (1) a statement by the President of the police union in 2016; (2) the 2017 report by the DOJ; and (3) a statement by the Mayor. *See* Cplt., at ¶ 70 (Dckt. No. 1). Black's complaint also

11

lists four cases and settlements, beginning in 1994, that mention the CPD's code of silence. *Id.* at ¶ 71(a)–(d).

Again, allegations are not evidence, so they do not count at the summary judgment stage. And the complaint swept more broadly than Black's summary judgment brief, too. Black never mentioned those statements in his summary judgment response brief, so they are waived.

The parties spend a bunch of pages discussing whether there is evidence of a widespread practice of police lying in criminal cases, and covering their backs through a code of silence. Black's claim fails for a more basic problem. There is no discernible link between any such widespread practice and the arrest of Black.

A widespread practice of giving false testimony does not support Black's case unless his case involves false testimony. But here, Black puts almost nothing in the record about the underlying incident. The record includes nothing about testimony of the police officers when they obtained his arrest warrant.[5] It is hard to see how a widespread practice of false testimony can be the "moving force" in Black's case when there is no evidence in the record that Black's case *involved* false testimony. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) ("This 'rigorous causation standard' requires 'a "direct causal link" between the challenged municipal action and the violation of [the plaintiff's] constitutional rights.'") (brackets in original, citation omitted); *id.* at 236 ("In short, a *Monell* plaintiff must show that some municipal action directly caused him to suffer a deprivation of a federal right . . . ."); *LaPorta*, 988 F.3d at 986 ("This rigorous causation standard guards against backsliding into respondeat superior liability.").

---

[5] The testimony of the police at trial – assuming that they testified at all – presumably is not at issue here because Black was acquitted, and thus suffered no injury from any such testimony. *See Bianchi v. McQueen*, 818 F.3d 309, 319–20 (7th Cir. 2016) ("[T]he plaintiff's acquittal foreclosed any due-process claim."). But in any event, there is nothing in the record about any trial testimony, either.

Black has put nothing in the record about the testimony of the officers. And he offered no evidence that any of the officers testified falsely. He simply alleges false arrest (in his complaint), and offers no evidence of any false testimony. Evidence of a widespread practice of false testimony cannot support a claim unless this particular incident with Black involved false testimony.

There is no evidence in the record that could support a finding by a reasonable jury that the officers in question testified falsely in Black's criminal proceeding. So, evidence about a widespread practice of giving false testimony in *other* cases cannot support a claim in this case. Without any evidence that the officers in question testified falsely *here*, it makes no difference if other officers testified falsely *over there*.

In short, there is no link between what happened to Black and what happened to other people in other cases. If this case didn't involve false testimony, then false testimony in other cases is neither here nor there. And here, there is no evidence of false testimony during Black's prosecution.

Black also fails to offer sufficient evidence that there is, in fact, a widespread practice of giving false testimony. Black relies almost exclusively on testimony from the City during its Rule 30(b)(6) deposition. *See* Pl.'s Opp. to Defs.' Mtn. for Summ. J., at 3–8 (Dckt. No. 120). Tim Moore, the Commander of the Bureau of Internal Affairs of the Chicago Police Department, testified on behalf of the City.[6] Black relies on a few passages where Moore described a code of silence at the CPD as "a problem." *Id.* at 3.

---

[6] Notably, Black motioned for sanctions regarding Moore's deposition because, according to Black, the witness was not properly prepared to discuss CPD's code of silence under Rule 30(b)(6). *See* Mtn. for Sanctions (Dckt. No. 122). Magistrate Judge Maria Valdez denied Black's motion. *See* 9/13/21 Order (Dckt. No. 136).

Moore testified that the City is "aware" that police officers testify untruthfully. *See Moore Dep.*, at 34:4-10 (Dckt. No. 115-6). He also testified that code-of-silence behavior is "a problem." *Id.* at 39:7-20. Specifically:

> Q:     What does the City know about police officers testifying untruthfully?
>
> A:     The City, at large, is aware. I believe that they are aware that officers that testify untruthfully are subject to discipline up to separation from the police department.
>
> Q:     Does the City believe there is a problem with officers testifying untruthfully?
>
> A:     Yes.[7]
>
> *          *          *
>
> Q:     You have testified that there's a problem about police officers testifying untruthfully, correct, sir?
>
> A:     I did.
>
> Q:     And that remains the case today, correct, sir?
>
> A:     That is correct.
>
> *          *          *
>
> Q:     So is there a problem with code-of-silence behavior in the Chicago Police Department?
>
> [Objection omitted]
>
> A:     It does exist in the department.
>
> Q:     And is it a problem?
>
> [Objection omitted]
>
> A:     Yeah. Actually, one allegation, that is a problem, but of course, there is more than just one allegation.

---

[7] This question is ambiguous. It could mean "Does the City believe that the City has a problem with officers testifying untruthfully?" Or it might mean "Does the City believe that it is *problematic* for officers to testify untruthfully?"

* * *

Q:     So when we talk about code-of-silence behavior, you understand that we
       are talking about social solidarity where groups of police try to protect
       others by failing to report what is obvious misconduct, correct sir?

A:     Yes.

Q:     And it is a problem within the Chicago Police Department, correct, sir?

A:     Yes.

*Id.* at 34:2-10, 34:19 – 35:1, 39:7-20, 40:4-16.

That testimony falls short of supporting the notion that there is a widespread practice of
police officers giving false testimony, and then failing to report on the misconduct of other
officers. The deponent testified that there is a problem with false testimony. That's not the same
thing as saying that there is a widespread practice of giving false testimony. Saying that there is
"a problem" doesn't tell you much about whether the practice is widespread.

If there was some wiggle-room in the testimony, the deponent later tightened it up.
Moore clarified that when he used the term "problem," he simply meant that there were past
instance of improper conduct. Specifically:

Q:     Commander Moore, do you believe that all Chicago police officers engage in the
       behavior of lying under oath?

A:     I do not.

Q:     You previously testified that this is a problem. Does that mean that there have
       been instances of this behavior occurring?

A:     Yes. That is what it means. It has occurred.

*Id.* at 52:10-18. He also testified that giving false testimony is not a systemic problem within the
Chicago Police Department. *Id.* at 53:1-3; *see also id.* at 55:4-5 (testifying that he did not have

15

"any data in front of me that would, you know, lead to the answer of that question with certainty").

The magnitude of the problem was not pinned down. In fact, in that passage, the witness made clear that it was "a problem" if there was even one allegation of false testimony. "Actually, one allegation, that is a problem, but of course, there is more than just one allegation." *Id.* at 39:18-20. One incident might be enough to create "a problem," *id.*, but it isn't enough to create a widespread practice under *Monell*. *See Thomas*, 604 F.3d at 303.

To be sure, this Court must view the evidence in a light favorable to Black as the non-moving party, and draw reasonable inferences in his favor. *See Chaib*, 819 F.3d at 341. Even if this Court reads the testimony to say that there is a problem with false testimony within the Chicago Police Department, it still would not be enough. Testimony that there is "a problem" is amorphous and non-descript, and does not give anyone much to go on. It feels more like a buzzword than evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . .").

*Monell* sets high standards, and for good reason. Courts must guard against lowering the standards, or else municipalities could be subject to vicarious liability through the backdoor. Testimony that there is "a problem" is not enough to support a finding that there is a widespread practice.

Black offers almost no other evidence. Black points to the fact that Officer Hernandez has received eight complaints of misconduct against him, with no subsequent disciplinary actions. *See* Defs.' Resp. to Pl.'s Statement of Additional Facts, at ¶ 7 (Dckt. No. 133). But the record includes no additional information about those complaints. What were those complaints

about?  Driving too fast in a school zone?  Putting on handcuffs too tight?  Saying something snarky during a traffic stop?

Maybe they involved situations that were similar to the case at hand, or maybe not.  It is anyone's guess.  But summary judgment is the time for evidence, not guesswork.  *See Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) ("[T]he facts of this case – where Mathews and Chengary conducted superficial investigations and Doubek faced no official discipline for her actions – raise serious questions about accountability among police officers.  But a *Monell* claim requires more than this; the gravamen is not individual misconduct by police officers (that is covered elsewhere under § 1983), but a *widespread practice* that permeates a critical mass of an institutional body. . . .  [M]isbehavior by one or a group of officials is only relevant where it can be tied to the policy, customs, or practices of the institution as a whole.") (emphasis in original); *Condon v. City of Chicago*, 2011 WL 5546009, at *3 (N.D. Ill. 2011) ("The word 'widespread' must be taken seriously in demonstrating a *Monell* claim.") (addressing a code-of-silence claim).

Without evidence showing that the complaints against Hernandez were similar to the case at hand, they cannot support an inference of a widespread practice of similar conduct.  *See Page v. City of Chicago*, 2021 WL 365610, at *2 (N.D. Ill. 2021) ("[T]hese allegations [of complaints against an officer] – without more information connecting the complaints to the alleged constitutional violation at issue here – are insufficient to support Page's *Monell* claim.").  In fact, courts have rejected such allegations at the motion to dismiss stage.  *See, e.g.*, *Boone v. City of Chicago*, 2018 WL 1014509, at *1–2 (N.D. Ill. 2018) (Tharp., Jr., J.) (dismissing plaintiffs' *Monell* claim where they failed to provide information about the subject matter of the complaints); *Thomas v. City of Markham*, 2017 WL 4341082, at *4 (N.D. Ill. 2017) (Alonso, J.)

17

("[A]llegations of general past misconduct or allegations of dissimilar incidents are not sufficient to allege a pervasive practice and a defendant's deliberate indifference to its consequences.").

Some other courts have allowed cases involving a code of silence to proceed past summary judgment. But those cases included more evidence than the record available here. *See, e.g.*, *Godinez v. City of Chicago*, 2019 WL 5597190, at *3 (N.D. Ill. 2019) ("To show a genuine issue of material fact exists, Plaintiff relies on the following evidence: (1) the 2017 Department of Justice Report (DOJ Report); (2) April 2016 Police Accountability Task Force Report (PATF report); (3) statements by former Mayor Rahm Emanuel and Superintendent Eddie Johnson; (4) Charles Drago's expert report; (5) other cases involving death by positional asphyxia; and (6) the officers' testimony in this case."); *Est. of Loury by Hudson v. City of Chicago*, 2019 WL 1112260, at *7 (N.D. Ill. 2019) (considering the 2017 DOJ Report and 2016 PATF report, and concluding that "the admissible reports, along with other evidence from the record, demonstrate that there is a genuine issue of material fact as to the existence of a pervasive code of silence and other *de facto* policies within the CPD"); *LaPorta v. City of Chicago*, 277 F. Supp. 3d 969, 987–89 (N.D. Ill. 2017) (denying summary judgment because of the defendant officers' "investigative shortcomings," plaintiff's expert testimony, the 2017 DOJ Report, and the 2016 PATF report).

In sum, Black has not come forward with sufficient evidence to support a *Monell* claim about a widespread practice.

### B.     Failure to Train/Discipline

Finally, Black brings a *Monell* claim about the City's alleged practice of failing to train and discipline its officers. Once again, Black does not come forward with sufficient evidence.

When a *Monell* claim involves inaction, a plaintiff must show that the "policy or custom demonstrates municipal fault," *i.e.*, deliberate indifference. *See LaPorta*, 988 F.3d at 986.

18

Deliberate indifference means a municipality "(1) failed to provide adequate training in light of foreseeable consequences; or (2) failed to act in response to repeated complaints of constitutional violations by its officers." *Miranda v. County of Lake*, 900 F.3d 335, 345 (7th Cir. 2018) (cleaned up).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of the persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (cleaned up). Deliberate indifference applies in both failure-to-train and failure-to-discipline cases. *See Jackson v. Village of Justice*, 2020 WL 1530734, at *4 (N.D. Ill. 2020) (collecting cases).

In addition to deliberate indifference, a plaintiff must prove causation, meaning that the failure to train or discipline was the "moving force behind the injury alleged." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (quotation marks omitted); *see also Connick*, 563 U.S. at 59 n.5 (noting that deliberate indifference and causation are separate elements of a failure-to-train claim).

Throughout his complaint, Black combines a failure-to-train claim and a failure-to-discipline claim. *See* Cplt., at ¶¶ 65, 66, 76, 82 (Dckt. No. 1). He argues that the officers were permitted to arrest, charge, and prosecute individuals without "proper training, supervision, or discipline," so officers lacked "knowledge of what constituted permissible basis for criminal charges and how evidence should be collected, maintained, and transmitted to the criminal justice system, among other subjects . . . ." *Id.* at ¶ 65.

19

But in his summary judgment response brief, Black frames his claim as involving a failure to discipline. He doesn't mention a failure to train at all. *See* Pl.'s Opp. to Defs.' Mtn. for Summ. J., at 8–10 (Dckt. No. 120). So the failure-to-train theory has left the station and is out of the case.

That leaves the failure-to-discipline theory. Black appears to limit the theory to the City's failure to discipline officers for testifying untruthfully. *Id.*; Cplt., at ¶ 65 (Dckt. No.1).

Once again, Black relies heavily on the testimony of Moore, the 30(b)(6) witness. Black argues that his testimony establishes the City's deliberate indifference to officers' untruthful testimony because Moore testified to the existence of "a problem" within the CPD. And if there is a problem – and the City's disciplinary system has not remediated that problem – then the City has acted with deliberate indifference to the issue.

Far from it. The existence of a problem is not the same thing as deliberate indifference to a problem. "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *See Brown*, 520 U.S. at 415. There's no *Monell* double-dipping.

If the mere existence of a widespread practice sufficed, then deliberate indifference would melt away as a requirement. And watering down the requirements for a *Monell* claim is exactly what the Supreme Court has instructed courts not to do. *See Brown*, 520 U.S. at 415 ("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability. As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights.") (emphasis in original); *see also LaPorta*, 988 F.3d at 987 ("These requirements – policy or

20

custom, municipal fault, and 'moving force' causation – must be scrupulously applied in every case alleging municipal liability.").

Brown has failed to come forward with evidence sufficient to support a finding of deliberate indifference by a reasonable jury. So he has no claim under a failure-to-train theory or a failure-to-discipline theory.

### Conclusion

For the reasons stated above, the individual Defendants' motion for judgment on the pleadings is granted, and the City's motion for summary judgment is granted.

Date: February 11, 2022 _____

Steven C. Seeger
United States District Judge